UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| FRANCISCO OCAMPO, | ) |
| | ) |
|        **Plaintiff,** | ) |
| v. | )    No.: 22-cv-1306-MMM |
| | ) |
| A WAHL, *et al.*, | ) |
| | ) |
|        **Defendants.** | ) |

### MERIT REVIEW ORDER – AMENDED COMPLAINT

Plaintiff, proceeding *pro se* and currently incarcerated at Pontiac Correctional Center ("Pontiac"), files an Amended Complaint pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. (Doc. 9). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### ALLEGATIONS

Plaintiff names 26 Defendants in his Amended Complaint, including correctional officers A Wahl, Strutmier, Grobe, Bilerbeck, Harold McKenna, Webb, N Spencer, Harris, Jeremy Whicker, Merek, Cerda Macy, E Meyer, John Cimadomo, and Dehm, former counselor Mallory

1

Kennedy, former warden Leonta Jackson, internal affairs officer Bailey, and C Bufford, Travis Bantista, Gish, R. Meister, Zartein, Zellers, Maley, Naretto, and Jibbens.

Plaintiff filed his initial complaint on September 7, 2022. (Doc. 1). Plaintiff includes allegations in his Amended Complaint related to events that occurred between January 8, 2020, and August 6, 2020. (Doc. 9 at 7-11). In determining the statute of limitations for § 1983 claims, federal courts have adopted the forum state's statute of limitations for personal injury claims. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). In Illinois, the statute of limitations for personal injury claims is two years. 735 ILCS 5/13-202. Thus, a § 1983 claim in a United States District Court in Illinois must be filed within two years of the accrual of the claim. A claim accrues for statute of limitations purposes when a plaintiff knows of the fact and cause of an injury. *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017). The statute of limitations is an affirmative defense but can be raised by the Court if the defense is obvious from the complaint. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("[W]hen the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit."). Thus, any claims arising from events that occurred between January 8, 2020 and August 6, 2020 are barred by the two-year statute of limitations.

The Court will now consider the remaining allegations. Plaintiff alleges that he was in his cell on December 8, 2020, when Defendant Spencer and correctional officer Shefferd, who is not named as a party, instructed him to cuff up because Defendant Gish wanted to speak with him. Plaintiff complied and was taken to meet with Defendant Gish, who informed Plaintiff that he was going to segregation for a sexual misconduct violation. On December 9, 2020, Plaintiff received a

disciplinary ticket, which stated that Defendant Herald McKenna reported that Plaintiff was standing at the front of his cell while masturbating, was ordered to stop, and did not comply.

On December 10, 2020, Plaintiff asked Defendant Webb if he could use the phone, but per Defendant Jibbens' instructions, Defendant Webb did not allow Plaintiff to use the phone.

When members of the Adjustment Committee, Defendants Travis Bantista and Cerda Macy, came to Plaintiff's cell on December 15, 2020, Plaintiff told them he needed more time to prepare his defense for the disciplinary hearing. Plaintiff states that he wrote a statement in a letter to Defendant Bantista, stating that the disciplinary ticket was issued in retaliation for reporting Defendants Merek, Spencer, and Harris to their supervisors for sexual harassment and because Defendant Whicker was removed from the south house after he broke the hot water pipe behind Plaintiff's cell.

Plaintiff's disciplinary hearing was held on December 22, 2020, before Defendant Bantista. Plaintiff alleges that Defendant Bantista did not read Plaintiff's written statement. Plaintiff pled not guilty and explained that officers had been peeping in his cell to catch him masturbating and exposing his genitals so they could send him to segregation for sexual misconduct. Plaintiff alleges that Defendant Bantista did not give him a fair hearing. Plaintiff was found guilty of all charges and given 25 days in segregation; however, he claims that he spent 27 days in segregation. Plaintiff alleges that Defendant Macy, the officer who investigated his disciplinary charges, wrongfully concluded that his witnesses' statements were irrelevant and did not ask Plaintiff's witnesses the questions he posed for them.

From February 6, 2021, to March 5, 2021, Defendant A. Wahl allegedly began sneaking up on Plaintiff to try to catch him exposing his genitals. On February 7, 2021, Plaintiff wrote a letter to Lieutenant Anglin from internal affairs to report Defendant Wahl's misconduct, but no

action was taken. On February 11, 2021 and February 15, 2021, Plaintiff called the Prison Rape Elimination Act ("PREA") hotline to report Defendant Wahl's sexual harassment. Plaintiff claims that internal affairs did not investigate or intervene. Plaintiff alleges that he became depressed and lost sleep as a result. Plaintiff wrote an emergency grievance on February 21, 2021, and sent the emergency grievance to Springfield on February 24, 2021.

Plaintiff alleges Defendants Warden Jackson and Lieutenant Zellers were "subjectively aware" that he wrote an emergency grievance on February 21, 2021, related to the "sexual misconduct perpetrated by defendant officer Wahl" and that Plaintiff posed a risk of harming himself. *Id.* at 32. Plaintiff claims that Defendants did not take any action to correct the problem, and as a result, he slashed his left wrist.

On March 2, 2021, Plaintiff spoke with two psychiatrists and told them he was feeling depressed and contemplating harming himself because officers were peeping in his cell to catch him exposing himself so they could send him to segregation. Psychiatrist Tami, who is not named as a party, told Plaintiff she would speak with Defendant Zartein, a lieutenant at Pontiac.

On March 3, 2021, Defendant Wahl came to Plaintiff's cell door and sarcastically said: "Ocampo are you still alive? What are you waiting for[?]" (Doc. 9 at 16). Plaintiff alleges that he became suicidal and slashed his left wrist. Plaintiff was put on suicide watch. He claims that he was not given stitches for his injured left wrist.

On March 10, 2021, Plaintiff was released from suicide watch and placed in the east house. Plaintiff claims that Defendants Zartein, Zeller, and Gish conspired to send their subordinates to sexually harass Plaintiff.

From February 25, 2021, to January 30, 2022, Plaintiff wrote 10 grievances related to sexual harassment, but Defendant Mallory Kennedy, the grievance counselor, allegedly destroyed his grievances.

On June 1, 2021, Defendant Wahl allegedly came to Plaintiff's cell door and said, "hey pervert are you still jerking off?" (Doc. 9 at 17). Plaintiff claims that he became depressed and had suicidal thoughts. Plaintiff called the PREA hotline.

On June 2, 2021, Plaintiff spoke with a mental health professional and was placed on suicide watch. Another mental health professional spoke with Plaintiff on June 14, 2021. When the interview ended, Defendant Wahl escorted Plaintiff back to his cell and allegedly said, "sooner or later we are going to catch you." *Id.*

On July 17, 2021, Defendant Bilerbeck peered inside Plaintiff's cell and saw Plaintiff on his bed masturbating. Defendant Bilerbeck contacted Lieutenant Lee, who is not named as a party. When Lee arrived at Plaintiff's cell, he did not sound his keys and tried to see if Plaintiff was exposing himself. Plaintiff claims that Defendant Bilerbeck continued to spy on Plaintiff from the catwalk and once glanced at his genitals.

On July 18, 2021, Plaintiff wrote a letter to internal affairs to report Defendant Zartein, Defendant Bilerbeck, and Lieutenant Lee's misconduct. Defendant Dehm was assigned to the gallery on July 18, 2021 and picked up Plaintiff's letter off the bars.

On July 20, 2021, after Plaintiff sent his letter to the law library to have a copy made, Defendant Wahl started working on 7-gallery where Plaintiff resided.

On July 23, 2021, Plaintiff wrote to the law library clerk to request a § 1983 complaint form. He alleges that Defendants Wahl and Gish did not send his letter to the law library.

On August 3, 2021, Plaintiff sent a letter to Springfield about Defendant Wahl's alleged sexual harassment. Plaintiff called the PREA hotline again on August 4, 2021, to report Defendant Wahl's sexual harassment. Plaintiff claims that Defendant Bailey from internal affairs declined to investigate. Plaintiff called the PREA hotline again on August 8, 2021, because Defendant Wahl allegedly screamed at Plaintiff, "you don't even have a dick to look at!" *Id.* at 19.

On August 10, 2021, Defendant Bailey came to the east house to interview Plaintiff about his PREA call of August 8, 2021. Plaintiff informed Defendant Bailey that Defendant Wahl was sexually harassing him, and Bailey responded that Wahl would be removed from the cellhouse. Later that day, Defendant Wahl came to Plaintiff's cell door, took a bar of soap from his pocket, and said in a derogatory tone, "you need a soap so you could wash your little dick?" *Id.* at 20.

On August 12, 2021, Defendant Wahl allegedly stopped in front of Plaintiff's cell and said "suck my dick" in Spanish. *Id.*

On August 15, 2021, Plaintiff was on his bed watching TV and masturbating. He alleges that Defendant Wahl went behind Plaintiff's cell to an area between the walls of the cellhouses where there is a small hole in the wall filled with tissue. Defendant Wahl allegedly pushed the tissue out and peeped inside his cell to try to catch Plaintiff masturbating and exposing his genitals. When Plaintiff saw the tissue fall out of the hole, he peered inside and saw Defendant Wahl. Plaintiff put the tissue back in place. One minute later, Defendant Wahl pushed the tissue out again and peeped inside Plaintiff's cell. Plaintiff sprinted to the wall, peered inside the hole, and saw Defendant Wahl moving away. A few minutes later, Defendant Wahl came inside 7-gallery and told Plaintiff, "you are a cock sucker; you are going to die in prison naked and afraid." *Id.* at 21.

On August 17, 2021, Plaintiff called the PREA hotline to report the incident. Defendant Bailey allegedly failed to comply with the PREA standards and did not investigate the allegations

of sexual harassment or submit a final written report to Defendant Jackson, the Warden of Pontiac. Plaintiff alleges that Defendants Bailey and Jackson did not take any action to correct the problem. When Plaintiff informed Defendant Wahl that he called the PREA hotline, Defendant Wahl began using obscene and derogatory language and told Plaintiff to "go find some dick; spread those cheeks in the yard." He also allegedly said, "We know you like to fuck your mattress … I am going to tell you only once if you keep calling PREA on me I am going to go inside your cell, take all your property and leave you naked and afraid." *Id.*

Plaintiff claims that Defendant Wahl came inside 7-gallery on September 22, 2021, did not sound his keys, stopped in front of Plaintiff's cell, and watched as Plaintiff masturbated under his sheet.

On October 4, 2021 and October 5, 2021, Plaintiff alleges that Defendant Whicker was peering in his cell from the catwalk to watch Plaintiff masturbate.

On November 14, 2021, Plaintiff claims that Defendant Strutmier stretched his neck inside Plaintiff's cell, saw him on his bed, and watched him masturbating. Plaintiff claims that this was not a routine check and violated PREA. Plaintiff claims that Defendant Gish was the active lieutenant in the east house and allegedly encouraged Defendant Strutmier to sexually harass him. Plaintiff called the PREA hotline and reported Defendant Strutmier's conduct on November 22, 2021. On November 28, 2021, Defendant Bailey and officer George, who is not named as a party, interviewed Plaintiff about his PREA call, but Defendant Bailey allegedly justified Defendant Strutmier's actions.

On November 30, 2021, Defendant Strutmier allegedly peered inside Plaintiff cell and watched him masturbate.

On December 3, 2021, Plaintiff gave a letter to Sergeant Rivera, who is not named as a party, to report that Defendant Strutmier had been peaking inside his cell while he masturbated. Rivera made an incident report and sent an e-mail to internal affairs. The next day, officer George from internal affairs came to the east house to interview Plaintiff about the incident on November 30, 2021, and made a report.

On December 8, 2021, Plaintiff sent a third letter to Springfield to report that Defendant Strutmier had sexually harassed him on November 19 and 30, 2021. Plaintiff claims that no action was taken.

On December 19, 2021, Defendant Strutmier came to Plaintiff's cell to pick up mail. Strutmier allegedly watched Plaintiff masturbate and waited to see if he would uncover himself and expose his genitals.

On December 20, 2021, Plaintiff called the PREA hotline and reported the events of December 19, 2021 and asked to move from 7-gallery due to Defendant Strutmier. The following day, Plaintiff was moved to 1-gallery in the same unit. He claims that internal affairs failed to comply with the standards established by PREA to thoroughly investigate all allegations of sexual abuse. Plaintiff alleges that he was not seen by a nurse or psychologist.

On December 26, 2021, Defendant Strutmier escorted a nurse to the east house and allegedly said, "now you can fuck your mattress." *Id.* at 26.

On January 1, 2022, Plaintiff spoke with Sergeant Rivera and told her about the derogatory comment Defendant Strutmier had made on December 26, 2021. Rivera made another incident report. Plaintiff also called the PREA hotline.

Plaintiff alleges that Defendant Maley intentionally assigned Defendant Strutmier to 1-gallery on January 2, 2021. When Defendant Strutmier came inside 1-gallery to pass out dinner

trays, he knocked on Plaintiff's door, gave Plaintiff his tray, and said: "Ocampo look I am going to stop harassing you, peeping in your cell; I promise you I won't look inside your cell; you win. I am done." *Id.* Plaintiff claims that it is obvious that Defendant Maley was sending Strutmier to sexually harass him, invade his privacy, and inflict psychological torture on him.

On January 4, 2022, internal affairs officer George came to the east house and interviewed Plaintiff about his PREA call.

Plaintiff alleges that Defendants Warden Jackson and Lieutenants Zartein, Zellers, Gish, and Maley are liable for their failure to supervise staff and present their subordinates from sexually harassing him.

## ANALYSIS

The review of a procedural due process claim requires a two-part analysis: whether the plaintiff was deprived of a protected liberty or property interest, and if so, what process was due. *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996). In other words, if a constitutional right is identified, then procedural due process must be provided. *Brokaw v. Mercer Cnty.,* 235 F.3d 1000, 1020 (7th Cir. 2000). A due process violation may be implicated if "the defendants deprived [plaintiff] of a liberty interest by imposing an 'atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *McCoy v. Atherton*, 818 F. App'x 538, 541 (7th Cir. 2020) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Court must examine not just the severity, but the duration of the complained-of conditions. *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997); *see also Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (characterizing up to 90 days in segregation a relatively short period, depending on the conditions imposed).

Here, Plaintiff alleges that a disciplinary hearing was held on December 22, 2020, before Defendant Bantista, who allegedly did not listen to Plaintiff's defense, read his written statement, or ensure that his witnesses had been interviewed. Plaintiff also alleges that Defendant Macy, the officer who investigated his disciplinary charges, wrongfully concluded that his witnesses' statements were irrelevant and did not ask his witnesses the questions he posed for them. Plaintiff alleges that he was found guilty of sexual misconduct and placed in segregation for 27 days. Plaintiff does not allege a loss of good time credits or plead that he was held under atypical conditions while in segregation. He pleads only that he spent 27 days in segregation. This is not enough to state a due process claim. *See Lekas v. Briley*, 405 F.3d 610, 613 (7th Cir. 2005) (90 days in segregation with loss of contact visits, loss of telephone and commissary privileges, and the inability to participate in programs did not implicate protected liberty interests); *see also Williams v. Brown*, 849 F. App'x 154, 156 (7th Cir. 2021) (only lengthy period of segregation and harsh conditions will violate due process). Therefore, this claim is dismissed for failure to state a claim upon which relief can be granted.

Defendants' derogatory and sexually explicit remarks do not to rise to the level of a constitutional violation. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (verbal abuse does not constitute cruel and unusual punishment); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution). Plaintiff also fails to state a claim of intentional infliction of emotional distress. This is so, as "[u]nder Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant intentionally or recklessly engaged in 'extreme and outrageous conduct' that resulted in severe emotional distress." *Dent v. Nally*, No. 16-00442, 2016 WL 2865998, at *4 (S.D. Ill. May 17, 2016) (internal citations omitted). "[E]motional distress

alone is not sufficient to give rise to a cause of action. The emotional distress must be severe...unendurable by a reasonable person…" *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (internal citations omitted). Defendants must have acted with knowledge of the probable impact his conduct would have on plaintiff. *Burks v. Lt. Sara Soto*, No. 15-00055, 2016 WL 6442181, at *4 (N.D. Ill. Nov. 1, 2016) (internal citations omitted). Plaintiff does not plead a sufficient showing here, and the IIED claim is dismissed.

Plaintiff alleges that Defendants peered inside his cell to attempt to catch him exposing his genitals as part of a conspiracy to place him in segregation for sexual misconduct. As an incarcerated individual, Plaintiff does not have the same privacy rights as free citizens. It is widely recognized that prisoners do not have the same expectation of privacy as members of the general public. *See Burge v. Murtaugh*, No. 07-0336PS, 2007 WL 4335461, at *2 (N.D. Ind. Dec. 7, 2007) (quoting *Hudson v. Palmer,* 468 U.S. 517, 527-28 (1984)). "In weighing the privacy interests of an inmate against the legitimate security concerns of the jailer, the privacy interests of the inmate almost always must yield." *Id.* at *2 (finding that cameras in showers and toilet areas was not a constitutional violation); *see also Faison v. Ward*, No. 16- 0853, 2016 WL 6582649, at *3 (S.D. Ill. Nov. 7, 2016) (plaintiff failed to state a cognizable claim where he was observed by officer while providing a urine sample for drug screening).

Plaintiff claims that he reported Defendant Wahl's misconduct by calling the PREA hotline on February 11, 2021, February 15, 2021, August 4, 2021, and August 17, 2021, but no action was taken. Nothing in the language of PREA creates a private right to action. *Sims v. Doe*, 2018 WL 4027632, at *3 (S.D. Ind. Aug. 22, 2018) (citing *Bentley v. Baenen*, 2018 WL 1108701 (E.D. Wis. Feb. 27, 2018) ("The PREA does not create a private cause of action in federal court."); *Poslof v. Martel,* 2018 WL 3019916, at n. 5 (S.D. Cal. June 18, 2018) (PREA "authorizes the reporting of

incidents or rape and sexual abuse in prison, but it does not give rise to a private cause of action by a prisoner."). Therefore, this claim is dismissed for failure to state a claim.

Plaintiff claims that Defendants Warden Jackson and Lieutenant Zeller failed to protect him after he reported Defendant Wahl's misconduct in an emergency grievance in February 2021. To plead a claim that prison officials violated his Eighth Amendment rights by failing to protect him, Plaintiff must allege facts suggesting that Defendants were deliberately indifferent to his safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 839–40 (1994). Plaintiff must "allege facts sufficient to show 'that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)). Plaintiff claims that Defendants Jackson and Zellers were "subjectively aware" that he posed a risk of harming himself because he submitted an emergency grievance about Defendant Wahl's misconduct. Plaintiff does not allege how Defendants were aware of his grievance. "Simply receiving correspondence from a prisoner" does not make a prison official liable for the alleged infraction. *Norington v. Daniels,* No. 11- 282, 2011 WL 5101943, at *2–3 (N.D. Ind. Oct. 25, 2011); *Diaz v. McBride*, 1994 WL 750707, at *4 (N.D. Ind. Nov. 30,1994) (a plaintiff cannot establish personal involvement and subject a prison official to liability under § 1983, merely by sending the official various letters or grievances complaining about the actions or conduct of subordinates). Furthermore, a warden cannot be held liable based solely on involvement in the grievance process. *See Thomas v. Knight*, 196 F. App'x 424, 429 (7th Cir. 2006) (explaining that a warden does not incur § 1983 liability just by participating in the grievance process). "If there is 'no personal involvement by the warden outside the grievance process,' that is insufficient to state a claim against the warden." *Neely v. Randle*,

No. 12 C 2231, 2013 WL 3321451, at *3 (N.D. Ill. June 13, 2013) (quoting *Gevas v. Mitchell*, 492 F. App'x 654, 660 (7th Cir. 2012)). Plaintiff's failure to protect claim is dismissed for failure to state a claim.

Plaintiff also claims that Defendants Warden Jackson and Lieutenants Zartein, Zeller, Gish, and Maley failed to supervise staff. There is no *respondeat superior* under § 1983. In other words, Defendants cannot be liable based only on their status as the supervisor of others. *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc). If state prison officials are named, they must be named in their individual capacities, and Plaintiff must allege that the official personally participated in the deprivation or was deliberately reckless as to the misconduct of subordinates or was aware and condoned, acquiesced, or turned a blind eye to it. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). This cause of action is dismissed for failure to state a claim.

The allegations against the remaining Defendants are too sparse to establish a claim against them. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (individual liability under § 1983 can only be based upon a finding that the defendant caused the deprivation alleged). "To be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Merely naming a defendant in the caption is insufficient to state a claim. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir.1998).

Plaintiff's Amended Complaint is DISMISSED for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff will have a final opportunity to file a Second Amended Complaint within 30 days of this Order.

**IT IS THEREFORE ORDERED:**

**1.     Plaintiff's Amended Complaint is dismissed without prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Plaintiff shall have a final opportunity to file a Second Amended Complaint within 30 days. If Plaintiff's Second Amended Complaint fails to state a claim, this matter will be dismissed with prejudice. Failure to file a Second Amended Complaint will result in the dismissal of this case, without prejudice, for failure to state a claim. Plaintiff's Second Amended Complaint will replace Plaintiff's Amended Complaint in its entirety. The Second Amended Complaint must contain all allegations against all Defendants. Piecemeal amendments are not accepted.**

**2.     Plaintiff's Motion for Appointment of Counsel [8] is DENIED, within leave to renew if Plaintiff files a Second Amended Complaint that states a colorable federal claim.** *See Watts v. Kidman*, **42 F.4th 755, 764 (7th Cir. 2022).**

**3.     Plaintiff's Motions for Status [10] is MOOT.**

ENTERED:     4/11/23

                                                            s/ Michael M. Mihm
                                                            Michael M. Mihm
                                                            U.S. District Court Judge